UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRON MOUNTAIN INCORPORATED, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXCAVATING, GRADING, ASPHALT, | ) | Judge: |
| PRIVATE SCAVENGERS & | ) | |
| RECYCLERS, AUTOMOBILE | ) | Case No.: |
| SALESROOM GARAGE ATTENDANTS, | ) | |
| LINEN & LAUNDRY AND MACHINERY, | ) | |
| SCRAP IRON, STEEL & METAL TRADE | ) | |
| CHAUFFEURS, HANDLERS, HELPERS | ) | |
| & ALLOY FABRICATORS LOCAL | ) | |
| UNION NO. 731, AFFILIATED WITH | ) | |
| THE INTERNATIONAL BROTHERHOOD | ) | |
| OF TEAMSTERS, | ) | |
| | ) | |
| Defendant/Respondent. | ) | |

**COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD**

Plaintiff/Petitioner Iron Mountain Incorporated, by its undersigned counsel, Gregory H. Andrews and Sarah J. Gasperini of Jackson Lewis P.C., brings this action against Defendant/Respondent Excavating, Grading, Asphalt, Private Scavengers & Recyclers, Automobile Salesroom Garage Attendants, Linen & Laundry and Machinery, Scrap Iron, Steel & Metal Trade Chauffeurs, Handlers, Helpers & Alloy Fabricators Local Union No. 731, affiliated with the International Brotherhood of Teamsters, ("Local 731" or "the Union") stating as follows:

**NATURE OF THE ACTION**

1. Iron Mountain brings this action to vacate the arbitration Decision and Award (the "Award") issued by Arbitrator Doyle O'Connor, (the "Arbitrator") in Federal Mediation and Conciliation Services ("FMCS") Case No. 161017-50394-1 on November 10, 2016, in connection

with an arbitration between Iron Mountain and Local 731, International Brotherhood of Teamsters because: first, the underlying grievance was not arbitrable pursuant to the express terms of the collective bargaining agreement between Iron Mountain and Local 731; second, the arbitrator exceeded his authority; and third the Award does not draw its essence from the collective bargaining agreement and manifestly disregards the language of the collective bargaining agreement. A true and accurate copy of the Award is attached as Exhibit A.

2. First, the Award must be vacated and the underlying grievance deemed substantively not arbitrable because the events giving rise to the underlying grievance (i.e. Iron Mountain's permanent replacement of 39 economic strikers) occurred prior to the parties entering into their first collective bargaining agreement ("CBA") and the CBA only allows for grievance and arbitration of "disputes or controversies arising on or after execution of this Agreement." (Ex. B. Tab 10. Art. 13.1)

3. Second, the Award must likewise be vacated because even though the Arbitrator expressly noted in his Award that Iron Mountain preserved the issue of substantive arbitrability, he exceeded the authority granted by the Parties' submission and decided issues of substantive arbitrability that were expressly reserved for an appropriate judicial forum.

4. Third, even if the grievance at issue was substantively arbitrable, the Award must still be vacated because it does not draw its essence from the CBA and manifestly disregards the language of the CBA.

**PARTIES, JURISDICTION, AND VENUE**

5. Iron Mountain, which provides record management services throughout the United States, is an employer within the meaning of Section 2(2) of the National Labor Relations Act,

2

("NLRA"), 29 U.S.C. § 152(2), and is engaged in an industry affecting commerce within the meaning of Section 2(7) of the NLRA, 29 U.S.C. § 152(7).

6. Local 731 is a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. Section 152(5). It is the collective bargaining representative for full-time and regular part-time Couriers, Couriers – CDL - B, Couriers CDL – A, Mobile Shred Operators and Courier Assistants employed by Iron Mountain at its Addison and Elk Grove Village, Illinois facilities.

7. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and Section 301(a) of the LMRA, (29 U.S.C. § 185(a)).

8. This Court has jurisdiction over this matter under Section 301(c) of the LMRA, (29 U.S.C. § 185(c)).

## FACTUAL AND PROCEDURAL BACKGROUND

### *Certification and Collective Bargaining*

9. On November 15, 2013, the National Labor Relations Board certified Local 731 as representative of all full-time and regular part-time Couriers, Couriers – CDL - B, Couriers – CDL - A, Mobile Shred Operators and Courier Assistants employed by Iron Mountain at two worksites located at that time at 1320 S. Rockwell St. in Chicago, Illinois ("Rockwell") and 333 S. Swift Road in Addison, Illinois[1].

10. Following certification of Local 731, the Parties engaged in collective bargaining for a first contract. The negotiations were protracted and continued for more than 15 months.

11. On June 18, 2015 with no agreement having been reached by the Parties, Local 731 commenced an economic strike against Iron Mountain[2].

---

[1] The Rockwell location was relocated to Swift Road following negotiations with the Union.
[2] All dates herein refer to 2015, except where otherwise noted.

12. Of the approximately 82 employees in the bargaining unit, 45 participated in the work stoppage. One employee returned to work on or about June 22. The other 44 strikers continued to strike until September 9.

13. Commencing on or about July 27, Iron Mountain began to hire full time permanent replacements for those employees engaged in the strike.

14. By letter dated July 27 Iron Mountain informed Local 731 of its decision to hire permanent replacement workers.

15. During the strike, Iron Mountain permanently replaced 39 of the 44 economic strikers and timely notified Local 731 prior to September 9, 2015 of these replacements.

16. On August 5, Iron Mountain provided the Union with copies of offer letters issued to the 23 permanent replacements hired as of that date and also provided Local 731 with periodic updates to the unit roster that included the names and hire dates of each of the 39 permanent replacement employees.

### *Strike Resolution and CBA Ratification*

17. On the afternoon of September 9, the parties met at Local 731's office in Burr Ridge, Illinois to continue negotiations for a first contract. At this meeting Iron Mountain provided Local 731 with an updated list of 38 permanent replacement employees who had accepted offers of employment as of September 8. Iron Mountain also informed Local 731 that one additional permanent replacement had been hired that morning in addition to the 38 permanent replacements on the list. Of these 39 permanent replacement employees, 34 permanent replacements had started work before September 9. At the end of the September 9 meeting, the parties settled the strike by executing the first CBA (Ex. B, Tab 10) and a one page "Agreement" drafted by the Union (Ex. B, Tab 11). Specifically, the Agreement states in pertinent part, "Iron Mountain has <u>notified</u>

4

Teamsters Local 731 that it is currently accepting the ten most senior striking employees . . . to return to work." (Ex. B, Tab 11, ¶3, *emphasis added*.) Thus, the Agreement drafted by the Union expressly recognized that all but ten of the economic strikers had been permanently replaced during the strike.

18. The strike ended as of September 10.

19. On September 10, Iron Mountain provided to the Union a list of unit employees including a) employees who did not participate in the strike, b) employees hired as permanent striker replacements who had already commenced active employment, and c) employees who accepted offers of permanent employment prior to the afternoon of September 9 but had not yet started work. The list also identified ten (10) strikers who had not been permanently replaced and were eligible to return to work to fill existing vacancies. (Ex. B, Tab 12)

20. On September 10, Iron Mountain mailed letters to the ten strikers returning to open positions.

### *The Collective Bargaining Agreement*

21. The CBA was executed on September 9 and had an effective date of September 9.

22. The CBA has a grievance and arbitration provision which defined a "grievance" as "All disputes or controversies arising, on or after execution of this Agreement, under or in connection with the express terms or provisions of this Agreement . . . ." (Ex. B, Tab 10. Art.13.1)

### *Permanent Replacement Grievance*

23. On September 15, Local 731 filed Grievance No. IM-01/15 (the "Grievance") alleging, in relevant part, that Iron Mountain violated "Article 16 of the CBA and all other applicable CBA articles" by "fail[ing] to lay-off replacement employees upon the unconditional

offer to return to work by its striking employees" and "[b]y refusing to accept all except ten of the returning employees." (Ex. B, Tab 14)

24. By letter dated October 7, Iron Mountain denied the Grievance asserting the matter grieved was not subject to the grievance or arbitration provisions of the CBA because the facts alleged in the Grievance arose prior to the execution of the CBA. (Ex. B, Tabs 15 & 17)

25. On or about October 28, the Union submitted the Grievance to the Federal Mediation and Conciliation Service. Doyle O'Connor was selected by the parties as the Arbitrator. Although proceeding to arbitration on the merits of the Grievance, Iron Mountain expressly reserved its right to challenge the arbitrability of the dispute in an appropriate judicial forum.

26. With the exception of the arbitrability of the dispute, all issues were submitted to Arbitrator Doyle based on a stipulated record consisting of a Joint Stipulation of Facts and Exhibits ("Joint Stipulation") and the Parties' briefs. True and accurate copies of the Joint Stipulation and Exhibits 1 – 26 (with employee contact information redacted) are attached as Exhibit B

### *The Award*

27. The Arbitrator issued his Award on November 10, 2016 granting the Grievance but noting, "[T]he Employer has, as is its right, asserted that the matter is not arbitrable, has objected to arbitral jurisdiction, and has declined to submit the issue of substantive arbitrability to arbitration, and expressly reserved the right to raise the issue of arbitrability in an appropriate judicial forum." (Ex. A, p. 2.)

28. In granting the Grievance, the Arbitrator concluded, in relevant part, "[t]he displaced former strikers shall be immediately offered reinstatement to employment, to the extent that during any period from September 10, 2015, forward, less senior employees were working in positions for which any displaced former striker was minimally qualified." (Ex. A, p. 31.)

**GROUNDS FOR VACATING THE ARBITRATOR'S DECISION AND AWARD**

29. Iron Mountain incorporates paragraphs 1 through 28 of this Complaint and Petition as if fully set forth herein.

30. Job vacancies created by employees on an economic strike are considered to be filled by permanent replacements as of the time the replacements accept an employer's offers of permanent employment in the strikers' jobs. *Home Insulation Service*, 255 NLRB 311, 312 fn. 9 (1981), *enfd. mem.* 665 F.2d 352 (11th Cir. 1981); (*see* Ex. B, Tab 23)

31. The Parties signed the CBA on September 9. This CBA was the Parties' first contract.

32. During the negotiations on September 9, and prior to the parties' entering into the CBA, Iron Mountain placed the Union on notice that 39 economic strikers had been permanently replaced and that only ten positions were available for returning strikers.

33. Local 731 acknowledged its awareness of Iron Mountain's permanent replacement of 39 economic strikers in the Agreement it drafted and presented to Iron Mountain on September 9. (Ex. B, Tab 11, ¶3) Specifically, the Agreement states in pertinent part, "Iron Mountain has notified Teamsters Local 731 that it is currently accepting the ten most senior striking employees . . . to return to work." (Ex. B, Tab 11, ¶3, *emphasis added*)

34. Local 731 was, thus, fully aware that 39 striking employees had been permanently replaced and that such permanent replacement of those strikers occurred before the execution of the CBA.

35. Where the formation of the parties' arbitration agreement (absent a valid provision specifically committing such disputes to an arbitrator), or its enforceability or applicability to the

dispute, is in issue, the Court, not an arbitrator, must resolve the disagreement. *See Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299-300 (2010).

36. Because the subject matter of the Grievance (i.e. Iron Mountain's hiring of permanent replacements) did not arise "on or after" execution of the CBA, it is thus not substantively arbitrable. (*See* Ex. B, Tab 10, Art. 13.1)

37. The second reason the Award must also be vacated is because the Arbitrator exceeded the scope of authority and jurisdiction vested upon him by consent of the Parties by deciding issues of substantive arbitrability (i.e. deciding the question of whether Iron Mountain's permanent replacement of economic strikers arose under the CBA while it was in effect. (*See* Ex. A, pp. 14-15) The Parties did not submit this question for resolution and the Arbitrator acknowledged that Iron Mountain reserved the issue of substantive arbitrability. (Ex. A, p. 1)

38. By deciding questions not before him, the Arbitrator thereby impermissibly dispensed his own brand of industrial justice that requires vacatur of the Award. *See Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); (Ex. A, pp. 1, 14-15; Ex. B, Tab 1)

39. The third reason the Award must be vacated is that even if the Parties' dispute was substantively arbitrable, the Award must still be vacated because it does not draw its essence from the CBA when viewed in the light of its language, its context, and any other indicia of the Parties' intention, which was the acceptance of Iron Mountain's proposal to return only ten strikers at the time and as discussed in negotiation with the Union, place the permanently replaced economic strikers on a preferential re-hire list consistent with longstanding federal labor law. *See Tootsie Roll Indus., Inc. v. Local Union No. 1, Bakery, Confectionery and Tobacco Workers' Intern.*

*Union*, 832 F.2d 81 (7th Cir. 1987) (internal citation omitted); *see also NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333 (1938); (Ex. B, ¶¶34-44)

40. By interpreting Iron Mountain's permanent replacement of economic strikers and its maintenance of a unit roster that included economic strikers, permanent replacements, and those who crossed the picket lines as "a situation of having an excess workforce" and a "reduction in force for the purposes of Article 16," the Arbitrator took it upon himself to amend the CBA and right what he perceived to be a wrong in the workplace. (*See* Ex. A, pp. 17-24; Ex. B, Tab 10, Art. 13.5)

41. In so doing, the Arbitrator improperly injected his personal notions of fairness into his decision and thus manifested "an infidelity to his obligation" to follow the law and the express terms and provisions of the CBA. *See USW v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). The Award should thus be vacated.

WHEREFORE, Iron Mountain prays that:

a. the Court enter judgment on Iron Mountain's Complaint and Petition to Vacate Arbitration Award in favor of Iron Mountain and against the Union;

b. Arbitrator O'Connor's Award be vacated in its entirety; and

c. the Court grant such other and further relief that the Court deems just and proper.

Dated: February 6, 2017

Respectfully submitted,
IRON MOUNTAIN INCORPORATED

By: s/ Gregory H. Andrews
    One of Its Attorneys

Gregory H. Andrews (gregory.andrews@jacksonlewis.com)
Sarah J. Gasperini (gasperis@jacksonlewis.com)
JACKSON LEWIS P.C.
150 N. Michigan Ave., Suite 2500
Chicago, Illinois 60601
(312) 787-4949
(312) 787-4995 Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February, 2017, I caused a true and correct copy of the foregoing **Complaint and Petition to Vacate Arbitration Award** to be served via e-mail and Federal Express, on:

Robert E. Bloch & David Lichtman
DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
(rebloch@dbb-law.com)
(dlichtman@laboradvocates.com)

And via e-mail and certified U.S. Mail, postage pre-paid, on:

Terry Hancock, President
TEAMSTERS LOCAL NO. 731
1000 Burr Ridge Parkway, Suite 300
Burr Ridge, IL 60527
(tjh@teamsters731.org)

**By: s/ Gregory H. Andrews**
One of Iron Mountain's attorneys